IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION



FILED
JAN 19 2016
Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| COLTON WILSON, | CV 15–15–H–DLC |
| Plaintiff, | |
| vs. | ORDER |
| DAVID SCHAEFER, M.D., MIKE FERRITER and TONY HEATON, | |
| Defendants. | |

Before the Court is Defendants' motion for summary judgment. For the reasons explained below, the Court grants Defendants' motion.

## I. Background

### A. Conviction and Deferred Sentence

On March 3, 2007, Plaintiff Colton Wilson ("Wilson") stabbed a man in the neck after he was confronted breaking into a car. As part of his plea agreement with the State of Montana ("State"), Wilson pleaded guilty to assault with a weapon in exchange for a recommendation that his sentence be deferred for six years. The plea agreement conditioned Wilson's deferred sentence on the successful completion of the Montana Department of Corrections ("DOC") boot camp program at Treasure State Correctional Training Center ("TSCTC"). On

1

December 18, 2008, Lake County District Judge Deborah Christopher accepted Wilson's guilty plea and set his sentencing for the following month.

At sentencing, Judge Christopher noted the lenient nature of the plea agreement and how she was initially inclined to reject it. However, she went on to explain that she would accept it because if Wilson failed under the terms of the agreement, she could then sentence him "to the full extent of the law." (Doc 20-4 at 4-5.) Judge Christopher stressed that Wilson's failure to complete the boot camp program would be considered a violation of the terms of his probation and he could potentially be sent to the Montana State Prison ("MSP") for a twenty year sentence. Judge Christopher also ordered Wilson to continue taking his prescription medication. At this time, Wilson was being treated for attention deficit hyperactivity disorder, mania, depression and bipolar disorder, and had been prescribed Vyvanse, Abilify, and Lamictal to treat these conditions.

On February 11, 2009, Wilson began the boot camp program at TSCTC. About two weeks later, Wilson was issued a "Disciplinary Infraction Report/Notice of Hearing" and was removed from the program. (Docs. 20-5 at 2, 20-6, at 3.) This removal was a result of Wilson refusing on order, interfering with staff, and disruptive conduct. Apparently, Wilson was ordered by a drill instructor to pick up the pace on a morning run and refused. When confronted by

the drill instructor, Wilson stated, "Fuck this, lock me up," and began walking away. (Doc. 20-5 at 2.) Wilson then refused orders to stop moving away from the drill instructor and was placed in temporary lockup as a security threat. Following these violations, the State filed a petition to revoke Wilson's deferred sentence.

## B. Revocation Proceedings

Following Wilson's removal from boot camp, he appeared at a series of revocation hearings before Judge Christopher. Wilson's attorney explained that he had not been successful at the boot camp program because he did not take three medications prescribed to him by his treating physician. The facts of why Wilson did not receive his medication is currently disputed by the parties. Wilson maintains that he did not receive his prescription medication because Defendants confiscated it during his transition to TSCTC. The State contends that Wilson arrived at TSCTC without documentation to show that he had been prescribed the medication and that he did not bring the mediation with him. Nonetheless, Wilson requested that he be allowed to attend a different program that permitted him to take his medication in order to serve his deferred sentence. Though the State agreed to Wilson's request, Judge Christopher was reluctant to give Wilson a second chance.

Judge Christopher explained that part of the reason she adopted the plea

agreement, which she considered lenient, was that she was familiar with the program at TSCTC. However, recognizing that Wilson had been unable to receive his medication at TSCTC, Judge Christopher allowed further arguments on the matter and ultimately decided to attempt to properly medicate Wilson and send him back to TSCTC. The court cautioned Wilson that this would be his final opportunity to succeed st boot camp. Further, the court stated that it recognized that there was issues with Wilson possibly receiving his medication, but noted that there was nothing that prevented him from going to boot camp. The court was very clear that she would not override the medical personnel at the DOC. If the DOC decided not to allow Wilson to take his prescribed medication and he failed to complete the program, Judge Christopher reiterated that she would send him to prison.

Following the revocation hearing, Wilson entered the Missoula Assessment and Sanction Center ("MASC") in preparation for his transportation to TSCTC. This facility prepares offenders for TSCTC and serves as a "pre-booter" program. (Doc 20-11 at 7.) Roughly three weeks after Wilson entered MASC, he was terminated from the program.

Appearing again before Judge Christopher at a hearing to discuss why he failed at MASC, Wilson's attorney explained that Wilson had again been

prevented by DOC personnel from taking his prescription medications. After hearing testimony from Wilson, his sister, and his probation officer, Judge Christopher granted the State's petition to revoke his deferred sentence. The court recognized that Wilson had been prevented from properly taking his prescribed medications, but refused to excuse Wilson's conduct "on the basis of medicine." (Doc. 20-11 at 27.) The court stated that it had heard conflicting opinion evidence about the appropriate medication regimen for Wilson throughout the entirety of his case and noted the lack of a consistent position on the subject. After granting the parties additional time to prepare for sentencing and after hearing opinion testimony regarding Wilson's proper medication regimen, the court sentenced Wilson to twenty years in the Montana State Prison ("MSP"), with fifteen years suspended. As the above chronology of events indicates, all of the events resulting in Wilson's revocation relate to his failure to comply with the conditions at TSCTC and MASC, and that all of the associated legal proceedings up to this point in time concern, in part, his alleged failure to receive his medications.

### C. Post-Conviction Relief

Wilson filed a Petition for Postconviction Relief on December 29, 2009. This petition alleged that the conditions of Wilson confinement at MSP violated his Eighth Amendment right to be free from cruel and unusual punishment under

the federal Constitution, as well as his individual right of dignity as guaranteed by the Montana Constitution. Specifically, Wilson alleged that the State, through the DOC, prevented Wilson from receiving his proper medications. This denial of medication exasperated his mental illness and lead to behaviourial problems, which, in turn, resulted in disciplinary "warnings and write-ups" which prolonged his sentence. (Doc. 20-15 at 9.) Wilson petitioned the court to be resentenced to a facility where he could receive all of his prescribed medications. The district court denied Wilson's petition and he appealed to the Montana Supreme Court. *Wilson v. State*, 249 P.3d 28 (Mont. 2010).

### D. Montana Supreme Court

On appeal, the Montana Supreme Court reviewed the record of the case and found no reason to reverse the district court's decision. *Id.* at 33. The court stated that the district court "denied Wilson's petition for postconviction relief on the grounds that the issues raised in the petition already had been decided." *Id.* The court further noted that the district court conducted multiple hearings associated with "Wilson's mental health and medication issues" and ultimately found that Wilson could succeed in the criminal justice system without the medication prescribed by his doctor. The court refused to overturn the district court's determinations regarding this evidence. *Id.*

The Montana Supreme Court also found that MSP's policies, which prevented Wilson from taking medication prescribed from his personal doctor, did not violate Wilson's constitutional rights. *Id.* at 34. The court based its decision on Wilson's failure to demonstrate that: (1) "that the staff at MSP consciously disregarded a serious risk of substantial harm to [his] health"; and (2) "the conditions at MSP greatly . . . exacerbated his mental illness or deprived him of his sanity." *Id.* In making these findings, the court noted the multiple hearings before the district court concerning Wilson's appropriate medical regime and the multiple opportunities to complete rehabilitation programs in place of prison. As previously noted, these hearings focused on Wilson's conduct in the TSCTC and MASC programs, and the court detailed Wilson's failure to comply with the conditions of the TSCTC and MASC programs, and the role his medications played in these failures. The court found that Wilson failed to establish his entitlement to postconviction relief and affirmed the district court's denial of his postconviction petition. *Id.*

### E. Habeas Proceeding

In 2011, Wilson filed a petition for Writ of Habeas Corpus in the Montana Ninth Judicial District Court, Toole County. Similar to his claims for psotconvition relief, Wilson's petition alleged that his state and federal

7

constitutional rights were violated when he did not receive his prescribed medications at TSCTC. Wilson further argued that "[b]ut for" these violations, "it is highly probable that [he] would not presently be incarcerated." (Doc. 20-19 at 19.) Wilson argued that his termination from boot camp was the direct result of Dr. David Schaefer's[1] refusal to continue his court ordered prescription regimen.

Wilson's petition was denied by the district court. The court provided two reasons for this denial. First, the court found that the statute Wilson sought relief under, Montana Code Annotated 46-22-102(2), was not available to attack the legality of an order revoking a deferred sentence. Second, the court found that Wilson's claims were "considered, addressed, and denied by the Montana Supreme Court in *Wilson v. State*." (Doc. 20-20 at 3.) Wilson's petition was denied and his case was dismissed. Wilson was ultimately released from prison on June 10, 2013.

In this proceeding, Wilson argues that Defendants Dr. Schaefer, Mike Ferriter, and Tony Heaton, employees of the DOC, individually violated his Eighth Amendment and Due Process rights by failing to maintain his prescription medication regimen at TSCTC. These constitutional violations, Wilson contends, were the direct and proximate cause of his subsequent incarceration, as well as

---

[1] Dr. Schaefer is the DOC's psychiatrist who treated Wilson at both TSCTC and MSP.

8

physical, emotional, mental and psychological harm. Wilson brings his claim under 42 U.S.C. § 1983 and seeks compensatory and punitive damages, among other forms of relief. Wilson filed his claims in the First Judicial District of Montana and Defendants removed the action to this Court. Based on these claims, and Wilson's prior litigation efforts, Defendants move for summary judgment.

## II. Discussion

Defendants move for summary judgment arguing that Wilson's claims are barred under the doctrines of collateral estoppel and res judicata. Defendants also argue that Wilson's claims are *Heck* barred, as well as precluded by the *Rooker-Feldman* doctrine. Because the Court finds that Wilson is collaterally estopped from bringing his claims, as well as barred by the doctrine established in *Heck v. Humphrey*, 512 U.S. 477 (1994), the Court will not address Defendants' other arguments.

### Legal Standard

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over

facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The "mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252.

## A. Collateral Estoppel

Defendants argue that Wilson's claims are precluded under the doctrine of collateral estoppel. It is well settled law "that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Thus, in deciding if Wilson's claims are precluded, this Court must apply Montana law. *Id.*

In Montana, collateral estoppel prevents parties "from reopening all questions essential to the judgment which were determined by a prior judgment." *Baltrusch v. Baltrusch*, 130 P.3d 1267, 1274 (Mont. 2006). Four elements must be satisfied in order to apply collateral estoppel: "(1) the identical issue raised was previously decided in a prior adjudication; (2) a final judgment on the merits was

issued in the prior adjudication; (3) the party against whom collateral estoppel is now asserted was a party or in privity with a party to the prior adjudication"; and "(4) the party against whom preclusion is asserted must have been afforded a full and fair opportunity to litigate any issues which may be barred." *Id.* Wilson, as the party attempting to defeat collateral estoppel, has the burden "to establish the absence of a full and fair opportunity to litigate." *Id.* (citation omitted).

### 1. Identical Issues

Defendants contend that collateral estoppel applies because the claims and issues presented by Wilson were fully adjudicated in his revocation proceeding, his post-conviction proceeding, and his habeas proceeding. To determine if the issues presented in those proceedings are identical to the issues currently presented by Wilson, this Court must "compare the pleadings, evidence and circumstances surrounding" those actions. *Holtman v. 4-G's Plumbing & Heating, Inc.*, 872 P.2d 318, 322 (Mont. 1994). Additionally, "[t]he term 'issue' does not equate with the elements of a cause of action." *Haines Pipeline Const., Inc. v. Montana Power Co.*, 876 P.2d 632, 636 (Mont. 1994) (holding modified by *Baltrusch*). Further, "[c]ollateral estoppel also prevents relitigation of determinative facts which were actually or necessarily decided in a prior action." *Brault v. Smith*, 679 P.2d 236, 238 (1984). As such:

> A litigant cannot avoid preclusion simply by reframing the same issues or raising novel contentions. A new contention is not, however, necessarily a new issue. If a new legal theory or factual assertion put forward in the second action is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.

*Baltrusch*, 130 P.3d at 1276 (citations and quotation marks omitted). However, the fact that two cases arise out of the same set of circumstances "does not necessarily mean that each involve identical issues." *Id.* at 1277. Nonetheless, application of collateral estoppel is justified "when the issues are so intertwined that to decide the issue before it, [this] Court would have to rehear the precise issue previously decided." *Id.* (citation omitted).

Here, the Court finds that the issues currently raised by Wilson are so intertwined with the issues raised in his previous proceedings, that to address his present claims would require the Court to rehear the issues raised in his revocation, post conviction, and habeas proceedings. For example, Wilson currently alleges that Defendants, either through their individual actions or through their acquiescence to DOC medical policies, violated his Eighth Amendment rights at TSCTC by withholding his court ordered medicine. This, Wilson contends, lead to a domino effect resulting in his incarceration at MSP. Thus, in order to decide the issue of whether his Eighth Amendment rights were

violated, the Court would have to determine if the actions of DOC personnel, i.e., the Defendants, "acted with deliberate indifference to [Wilson's] health and safety." *Wilson*, 249 P.3d at 33 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). However, the Montana Supreme Court already addressed this issue in Wilson's postconviction appeal and determined that Wilson's Eighth Amendment rights were not violated by the conditions of his confinement. *Wilson*, 249 P.3d at 34.

Wilson now attempts to distinguish the Montana Supreme Court's decision in *Wilson v. State* from his current litigation. Wilson argues that his appeal before the Montana high court challenged his conditions at MSP, not the actions of the Defendants while in custody at TSCTC. The Court finds that Wilson's argument raises form over substance. At issue in this case, just as it was an issue in *Wilson*, are the policies of the DOC which led to the denial of Wilson's prescribed medication. Even if the Court were to only look at the application of those policies while Wilson was in custody at TSCTC, the Court finds that the two arguments are so intertwined that the Court could not justifiably rule on the constitutionality of Defendants' conduct without hearing the same issues presented in *Wilson*.

Further, in hearing Wilson's current claim the Court would have to rehear

determinative facts that had already been decided in Wilson's previous proceedings. For example, if the Court allowed Wilson to continue with his current claims, the Court would need to hear evidence about his medical diagnosis and the proper treatment for this diagnosis. However, opinion evidence was already presented on this issue during Wilson's revocation hearing. As discussed by the Montana Supreme Court, the district court did not find "the expert testimony sufficiently compelling to conclude that Wilson could not succeed in the criminal justice system without" his medication and refused to disturb the district court's findings. *Wilson*, 249 P.3d at 33. This Court will do the same and, like the district court, refuse to excuse Wilson's conduct "on the basis of medicine." (Doc. 20-11 at 27.) The Court is satisfied that the first element of collateral estoppel is met.

### 2. Final Judgment

Next, Wilson may be precluded from bringing his claim if "a final judgment on the merits was issued in [a] prior adjudication." *Baltrusch*, 130 P.3d at 1274. This requires a determination of whether the issue was "actually litigated and adjudged as shown on the face of the judgment." *Gibbs v. Altenhofen*, 330 P.3d 458, 466 (Mont. 2014). This Court must give preclusive effect to a judgment if it was "adequately deliberated and firm." *Id.*

Here, the Court finds that a final judgment on the merits was entered in the district court's denial of Wilson's petition for postconviction relief and the subsequent affirmance of that denial by the Montana Supreme Court.[2] As stated above, the Court disagrees with Wilson's attempt to distinguish the issues presented in *Wilson* from the issues presented by the current action. As such, the Court finds that the constitutional issues Wilson currently raises were already litigated in the postconviction proceeding. The parties were given an opportunity to fully brief this issue and briefs were submitted. These decisions were final and on the merits.

Wilson argues that this element is not satisfied because he is currently seeking damages for the actions of the Defendants and damages were not available in the prior proceedings. However, Wilson fails to provide any binding precedent for this argument. In support of his argument, Wilson merely cites to cases which support his argument in the context of a res judicata analysis, not collateral estoppel. *See Audit Services, Inc. v. Anderson*, 684 P.2d 491 (Mont. 1984) (case decided solely on basis of res judicata); *Joe v. City of Tucson*, 120 F.3d 268 (9th Cir. 1997) (unpublished) (damages argument decided on basis of res judicata);

---

[2] The Court also notes that final judgments were also issued in Wilson's revocation and habeas proceedings. Though the Eighth Amendment claims were not expressly raised during the revocation proceedings, the Court finds that Wilson could have raised these arguments.

15

*Burgess v. State*, 772 P.2d 1272 (Mont. 1989) (case decided solely on basis of res judicata). As such, the Court agrees with Defendants and finds that the second prong for collateral estoppel is satisfied.

### 3. Party Against Whom Collateral Estoppel is Asserted

Third, Wilson is collaterally estopped from asserting his claims if he "was a party or in privity with a party to the prior adjudication." *Baltrusch*, 130 P.3d at 1274. Here, it is beyond argument that Wilson was the prior party in the revocation, postconviction, and habeas proceedings. Wilson does not appear to dispute this prong and the Court finds that it is satisfied.

### 4. Full and Fair Opportunity to Litigate

Finally, Wilson is precluded from now raising his current claims if he was "afforded a full and fair opportunity to litigate any issues which may be barred." *Id.* Similar to his argument concerning the second prong of this test, Wilson contends that he was denied a full and fair opportunity to litigate the current issues because he could not seek damages in the prior proceedings. However, the plain language of this prong discusses the opportunity to litigate issues, not the opportunity to pursue various forms of relief or to bring a specific claim, i.e., his § 1983 claims. Further, as discussed above, the authority Wilson provides in support of his argument is inapposite to the issue of whether his claims are

precluded by collateral estoppel. Additionally, the Court finds that Wilson had the full and fair opportunity to litigate the alleged denial of appropriate medical care on numerous occasions and, in fact, did so during his three previous proceedings. Because Wilson failed in his burden to establish the absence of a full and fair opportunity to litigate these issues, the Court finds that all elements are satisfied and Wilson is collaterally estopped from bringing his current claims.

## B. *Heck*

Defendants also argue that Wilson is precluded from bringing the present claims under the doctrine established in *Heck v. Humphrey*, 512 U.S. 477 (1994). There, the United States Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck*, 512 U.S. at 486–487. Further, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

17

Here, Wilson contends that Defendants' failure to provide medical treatment "was a cause-in-fact of [his] termination from [boot camp] and his subsequent incarceration." (Doc. 1-1 at 16.) Based on these arguments, Wilson is essentially asking the Court to rule that the revocation of his deferred sentence and his commitment to MSP were a mistake, and but for this mistake, he would not have been incarcerated. The Court finds that this would necessarily imply the invalidity of his sentence and run counter to the decisions issued in the revocation, postconviction, and habeas proceedings.

Wilson counters that *Heck* is not applicable to this case because the Defendants' constitutional violations are "conceptually and temporally distinct from the conduct forming the basis for his criminal conviction." (Doc. 23 at 31.) Wilson further argues that his § 1983 claims are not based on his conviction and, instead, stem from Defendants' unconstitutional conduct during his time at TSCTC.

This argument, however, ignores the fact that *Heck* prevents the award of damages when a judgment in favor of Wilson would imply the invalidity of his sentence. Here, the harm alleged by Wilson, i.e., his incarceration resulting from his revoked sentence, is argued to be caused by Defendants' unconstitutional actions. Any award for damages would undoubtedly suggest that the district court

erred in revoking his sentence. Wilson claims are barred under *Heck*.

Accordingly, IT IS ORDERED that:

(1) Defendants' motion for summary judgment (Doc. 18) is GRANTED.

(2) Defendants' motion for leave to take Wilson's deposition (Doc. 32) is DENIED as moot.

(3) The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff. This case is CLOSED.

DATED this 19th day of January, 2016.

Dana L. Christensen, Chief District Judge
United States District Court